## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JAMIE SIMON**                                                    **CIVIL ACTION**

**VERSUS**                                                         **No. 11-1432**

**GRAND ISLE SHIPYARD, INC. ET AL.**                               **SECTION I**

## ORDER & REASONS

Before the Court are four motions filed by defendants BP America, Inc., BP American Production Company, BP Exploration & Production, Inc., and BP p.l.c. (collectively, "BP"): a motion[1] to exclude the opinions of plaintiff's expert C. Ann Conn ("Conn"), a motion[2] to exclude the opinions of plaintiff's expert Susan Andrews ("Andrews"), a motion[3] to exclude the opinions of plaintiff's expert Patricia Williams ("Williams"), and a motion[4] for summary judgment. Plaintiff Jamie Simon ("Simon") opposes[5] the motions. For the reasons below, the Court grants the motion to exclude the opinions of Williams, grants in part and dismisses as moot in part the motion to exclude the opinions of Conn, grants the motion for summary judgment, and dismisses as moot the motion to exclude the opinions of Andrews.

---

[1] R. Doc. No. 78.

[2] R. Doc. No. 79.

[3] R. Doc. No. 80.

[4] R. Doc. No. 81.

[5] R. Doc. Nos. 83–86.

# I.    FACTUAL BACKGROUND

The instant action is a "B3" case arising out of the 2010 Deepwater Horizon oil spill in the Gulf of Mexico.[6] B3 cases involve "claims for personal injury and wrongful death due to exposure to oil and/or other chemicals used during the oil spill response (e.g., dispersant)." *In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2021 WL 6053613, at *9 (E.D. La. Apr. 1, 2021) (Barbier, J.). In the course of the MDL proceedings, Judge Barbier approved the Deepwater Horizon Medical Benefits Class Action Settlement Agreement, which included a Back-End Litigation Option ("BELO") permitting certain class members to sue the defendants for later-manifested physical conditions. *Id.* at *2. The B3 plaintiffs, by contrast, either opted out of the class action settlement agreement or were excluded from its class definition. *Id.* at *10 n.3. To prevail on their claims, the "B3 plaintiffs must prove that the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response."[7]

During the Deepwater Horizon oil spill, Simon was employed on a vessel where oil spill response workers slept and ate meals.[8] Simon's duties involved housekeeping tasks such as cleaning floors and doing workers' laundry.[9] She alleges that she was

---

[6] R. Doc. No. 8 ("Order Severing 780 Cases in the B3 Pleading Bundle and Re-allotting Them Among the District Judges of the Eastern District of Louisiana") (Barbier, J.).

[7] *Id.* at 53; *see also id.* at 54 (noting that "proving causation will be a key hurdle for the B3 plaintiffs").

[8] R. Doc. No. 1, ¶¶ 6–7.

[9] R. Doc. No. 85, at 4.

exposed to crude oil and dispersants through these duties, as well as by aerial spraying of dispersants over the ship where she worked.[10] Specifically, Simon alleges that, through these activities, she was exposed to arsenic, which caused her chronic toxic encephalopathy ("CTE").

## II.   LEGAL STANDARDS

### a.  Motion *in Limine*

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>   (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>   (b) the testimony is based on sufficient facts or data;
>   (c) the testimony is the product of reliable principles and methods; and
>   (d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)).

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239,

---

[10] *Id.* at 4–5.

243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires a trial court to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

A number of nonexclusive factors may be considered with respect to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the technique's potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (quoting *Kumho Tire*, 526 U.S. at 152)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

As for determining relevancy, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [under Rules 401 and 402], but also

in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702, Advisory Committee Note).

"[W]hen expert testimony is challenged under Rule 702 and *Daubert*, the burden of proof rests with the party seeking to present the testimony." *Kennedy v. Magnolia Marine Transp. Co.*, 189 F. Supp. 3d 610, 615 (E.D. La. 2016) (Africk, J.). The Court applies a preponderance of the evidence standard when performing its gatekeeping function under *Daubert. See Daubert*, 509 U.S. at 592 n.10. And the Court is not bound by the rules of evidence—except those rules concerning privileges—when doing so. *See id.*

### b.    Summary Judgment

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the nonmovant fails to meet their burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore*

6

*Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *See Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

## III.   ANALYSIS

### a.  Motion *in Limine*

#### i.    *Williams*

Williams is "board-certified in Toxicology and [is] a Diplomate of the American Board of Toxicology."[11] Simon offers Williams as an expert witness as to both general and specific causation. Williams' report states that "a cause-effect relationship exists between [a]rsenic and [CTE]."[12] It also states that Simon "experienced significant exposures to [a]rsenic in concentrations known to cause adverse health effects" and that her "exposures were sufficient to cause [CTE]."[13]

As this Court has previously explained, "a [general] causation expert must identify 'the harmful level of exposure to a chemical.'" *Novelozo v. BP Expl. & Prod. Inc.*, No. 13-1033, 2022 WL 1460103, at *8 (E.D. La. May 9, 2022) (Africk, J.) (citation omitted). This "is one of the minimal facts necessary to sustain the plaintiff's burden

---

[11] R. Doc. No. 80-2, at 2.

[12] *Id.* at 181.

[13] *Id.*

in a toxic tort case." *Id.* (quotations and citation omitted). BP argues that Williams'
general causation opinion is unreliable because it "fails to identify the dose of
exposure known to cause injury."[14]

The general causation opinions that Williams offers in support of Simon's case
have recently been excluded in two B3 cases in another section of this Court. *See
Griffin v. BP Expl. & Prod.*, No. 17-3244, 2023 WL 183894, at *5 (E.D. La. Jan. 13,
2023) (Ashe, J.); *Martin v. BP Expl. & Prod.*, No. 17-3249, 2023 WL 183905, at *5
(E.D. La. Jan. 13, 2023) (Ashe, J.). In those cases, Judge Ashe concluded that

> William's general causation opinion must be excluded for the same reason
> that this Court has excluded other general causation opinions in B3 cases –
> namely, Williams fails to identify the dose of exposure (i.e., the exposure to a
> certain level of a certain substance for a certain period of time) to arsenic
> necessary to cause the development of CTE in the general population.

*Griffin*, 2023 WL 183894, at *5; *Martin*, 2023 WL 183905, at *5.[15] In those cases, as
here, Williams' opinions were being offered to support the plaintiff's contention that
arsenic exposure caused the plaintiff's CTE. *Griffin*, 2023 WL 183894, at *3; *Martin*,
2023 WL 183905, at *3.

Simon does not clearly attempt to distinguish the instant matter from *Griffin*
and *Martin*. Instead, Simon argues that BP's motion *in limine* should be denied
because "Williams' methodology lays out the measure of exposure to arsenic that

---

[14] R. Doc. No. 80-1, at 10.

[15] Reports by Williams were also excluded in *Osmer v. BP Expl. & Prod.*, No. 19-
10331, 2021 WL 4206950 (E.D. La. Sept 16, 2021) (Lemelle, J.) and *In re Deepwater
Horizon BELO Cases*, No. 19-963, 2020 WL 6689212, at *12 (N.D. Fl. Nov. 4, 2020)
*aff'd sub nom Griffin v. BP Expl. & Prod., Inc.*, No. 20-14544, 2022 WL 104243 (11th
Cir. Jan. 11, 2022).

caused Jamie Simon to develop CTE."[16] In support of this contention, Simon states that "[a]ccording to the Zierold study, two parts per billion is the lowest level of exposure to arsenic that would cause toxic encephalopathy."[17] She additionally points to a portion of Williams' report that states that "[t]he level of arsenic in the product coming from the plane or from the direct use of Corexit to wash the bottom of the boats was 160 parts per billion," and that testing by Lee Lemond[18] indicated that "the near shore oil samples had a concentration of 130 parts per billion."[19] Simon additionally asserts that two other studies[20] "lay out a dose of arsenic that will cause [CTE] as well as the duration of exposure."[21]

There are several issues with Simon's argument. First, the Zierold study to which she refers is titled *Prevalence of Chronic Diseases in Adults Exposed to Arsenic-Contaminated Drinking Water.*[22] As suggested by the title, this study examined

---

[16] R. Doc. No. 85, at 9.

[17] *Id.*

[18] Lee Lemond is another expert proffered by Simon. His opinions are not challenged in the instant motions. See R. Doc. No. 80-1, at 4–5.

[19] R. Doc. No. 85, at 10.

[20] Simon refers to Clint R. Carroll, et al., *Low-Level Arsenic Exposure and Neuropsychological Functioning in American Indian Elders*, ENVIRON RES. (2017), and Yu Chen, et al., *Arsenic Exposure at Low-to-Moderate Levels and Skin Lesions, Arsenic Metabolism, Neurological Functions, and Biomarkers for Respiratory and Cardiovascular Diseases: A Review of Recent Findings from the Health Effects of Arsenic Longitudinal Study (HEALS) in Bangladesh*, TOXICOLOGY APPL. PHARMACOLOGY (2009).

[21] R. Doc. No. 85, at 15.

[22] KM. Zierold et al., *Prevalence of Chronic Diseases in Adults Exposed to Arsenic-Contaminated Drinking Water*, 94 AM. J. PUB. HEALTH 1936 (2004).

effects of arsenic exposure through drinking water.[23] Simon does not allege that she was exposed to arsenic via drinking water, and Williams acknowledged in her deposition that her report does not include any opinions regarding drinking water exposure.[24] Neither Williams' report nor Simon's briefing provides a basis for concluding that the level at which arsenic exposure via drinking water could cause CTE is the same level at which arsenic exposure via Simon's alleged exposure pathways could cause CTE.[25]

Additionally, none of the above-referenced studies nor Williams' report establish the *duration* of exposure necessary to cause adverse health effects. The dose of a substance is "a product of both the concentration of a chemical or physical agent *and* the duration or frequency of exposure."[26] As Judge Ashe recognized in *Griffin* and *Martin*, Williams' report does not identify "the exposure to a certain level of a certain substance *for a certain period of time*." *Griffin*, 2023 WL 183894, at *5 (emphasis added); *Martin*, 2023 WL 183905, at *5 (same). Therefore, even if the study Simon relies upon sufficiently established the level of exposure to arsenic required to cause CTE, the report would still fail to establish the harmful dose.

---

[23] The Carroll and Chen studies similarly studied the effects of arsenic-contaminated drinking water.

[24] R. Doc. No. 94-1, at 9 (Williams deposition, page 79:3–:7).

[25] As Simon recognizes, the Zierold study also does not mention CTE. Simon argues, however, that the study "observe[d] the major neurocognitive findings that are common in [CTE]." R. Doc. No. 85, at 14–15. It is unnecessary to examine this argument in light of the conclusions reached above.

[26] REFERENCE MANUAL ON SCI. EVID. 681 (3d ed. 2011) (emphasis added).

Due to the deficiencies discussed above, "Williams has not provided [information regarding the harmful level of arsenic exposure] with respect to the general population." *Griffin*, 2023 WL 183894, at *5. "[H]er report is [therefore] unreliable and her general causation opinions inadmissible." *Id.* [27]

### ii. Conn

"Conn is board certified in general neurology, pain management and headache medicine."[28] Though Conn's report is entitled "Specific Causation Report of Ms. Jamie Simon,"[29] plaintiff purports to offer Conn as an expert witness as to both general and specific causation. Regarding Conn's general causation opinions, plaintiff states that Conn "relied upon the opinions of the toxicologist Dr. Patricia Williams regarding the ability for arsenic to cause [CTE] in the general population."[30] As noted above, however, Williams' report fails to offer an admissible general causation opinion because it fails to identify the level and duration of exposure to arsenic that could cause CTE in the general population. Conn's report also fails to offer that information.

---

[27] The Court does not address the parties' arguments as to the admissibility of Williams' specific causation opinions because, as discussed below, without expert testimony as to general causation, Simon cannot carry her burden of proof to show that her CTE was caused by arsenic exposure related to her oil response work.

[28] R. Doc. No. 88, at 2.

[29] R. Doc. No. 78-2, at 1.

[30] R. Doc. No. 84, at 5.

Accordingly, Conn's report does not provide a basis for Simon to prove general causation.[31]

The Court does not further address the parties' arguments regarding Conn because, as discussed below, without general causation evidence, Simon cannot avoid summary judgment. To the extent that Simon intends to offer Conn's report as evidence of general causation, BP's motion *in limine* is granted. In all other respects, the motion is dismissed as moot.

### iii.    *Andrews*

Andrews is a neuropsychologist. Plaintiff states that "Andrews is not being offered to opine on the cause of the plaintiff's condition" but rather to "testify to the cognitive deficits of the plaintiff."[32] It is unnecessary to further address BP's motion *in limine* as to Andrews, as Simon lacks general causation testimony. *Griffin*, 2023 WL 183894, at *1 n.11 (declining to address the parties' arguments as to Andrews because the plaintiff lacked evidence as to general causation after exclusion of Williams' opinions); *Martin*, 2023 WL 183905, at *1 n.11 (same).

---

[31] Judge Ashe reached the same conclusion in *Griffin* and *Martin*. *Griffin*, 2023 WL 183894, at *1 n.11 ("Griffin insists [ ] that Conn is also being offered as a general causation expert, but the Court agrees with BP's assessment that Conn's report and deposition testimony indicate otherwise and that, in any event, she fails to offer any opinion concerning 'the dose of arsenic known to cause toxic encephalopathy.'"); *Martin*, 2023 WL 183905, at *1 n.7 (same).

[32] R. Doc. No. 83, at 5.

### b. Summary Judgment

BP contends that the Court should grant summary judgment due to Simon's inability, without Williams' testimony, to prove causation. Simon raises several arguments in opposition, none of which have merit.

First, Simon argues that Conn's report distinguishes this case from other B3 cases.[33] However, as discussed above, Conn's report does not establish general causation, and without general causation testimony, Simon cannot carry her burden of proof.

Simon next argues that "Williams issued a report identifying arsenic as the chemical toxin that caused" Simon's CTE and that Williams' report "link[s] [Simon's] injury to [the] harmful level of exposure."[34] These arguments are simply repeats of Simon's opposition to the motion *in limine* to exclude Williams' testimony, and they do not cure the deficiencies in Williams' report.

Finally, Simon suggests that even if the testimony of Williams and Conn is excluded, summary judgment should be denied because Simon may offer testimony by her treating physicians.[35] Simon argues that "the point raised by BP that the plaintiff lacks admissible expert evidence on *specific* causation is frankly incorrect."[36] However, as discussed above, Simon has failed to offer admissible *general* causation testimony. Assuming Simon is correct that the treating physicians may offer specific

---

[33] R. Doc. No. 86, at 4–5.

[34] *Id.* at 5–7.

[35] *Id.* at 7.

[36] *Id.* (emphasis added).

causation testimony, this would not redress Simon's lack of general causation evidence.

Moreover, Simon's treating physicians, Dr. Daniel Trahant ("Trahant") and Dr. Morteza Shamsnia ("Shamsnia"), are listed on her witness and exhibit list as "expert treating neurologists."[37] As to Trahant, BP states that Simon did not provide the expert reports and disclosures required by Federal Rule of Civil Procedure 26.[38] As to Shamsnia, BP does not state whether such materials were provided. Simon provides no basis for concluding that her treating physicians are qualified to opine as to whether arsenic caused Simon's CTE, much less that they provided the necessary reports and disclosures and that those reports and disclosures would pass muster under *Daubert*.

Williams is Simon's sole expert on general causation. As a result, Simon has failed to present a genuine issue of material fact with respect to her claims that her CTE was caused by exposure to arsenic contained in oil and dispersants. Accordingly, defendants are entitled to summary judgment. *Griffin*, 2023 WL 183894, at *5; *Martin*, 2023 WL 183905, at *5.

## IV.   CONCLUSION

**IT IS ORDERED** that the motion *in limine* to exclude the opinions of Williams is **GRANTED**.

---

[37] R. Doc. No. 70, at ¶¶ 2, 3.
[38] R. Doc. No. 95, at 6–7.

**IT IS FURTHER ORDERED** that the motion *in limine* to exclude the opinions of Conn is **GRANTED** to the extent it seeks to exclude her purported general causation opinions, and **DISMISSED AS MOOT** with regard to her specific causation opinions.

**IT IS FURTHER ORDERED** that the motion for summary judgment is **GRANTED** and Simon's claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion *in limine* to exclude the expert opinions of Andrews is **DISMISSED AS MOOT**.

New Orleans, Louisiana, March 9, 2023.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**